NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMILIO J. POLANCO, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 2:12-cv-778 (DMC)(JAD) |
| NEW JERSEY ATTORNEY GENERAL'S OFFICE, JEFFERY S. CHIESA, ESQ., ATTORNEY GENERAL STATE OF NEW JERSEY, NEW JERSEY STATE POLICE, DET. CHRISTOPHER MUSCIANESI, SHIELD NO. 6143, DSG. G. LUBERTAZZI, SHIELD NO. 4636, DSG. R. SCUDDER, SHIELD NO. 5012, DET. I. L. WILLIAMS, SHIELD NO. 5415, DET. I. R. ZULINSKI, SHIELD NO. 5815, DET. T. KEYES A/K/A REYES, SHIELD NO. 6302, AND DEPUTY ATTORNEY GENERAL CHRISTOPHER ROMANYSHYN, ESQ., JOHN DOES #1 THROUGH 5; AND A, B, C ENTITIES, | |
| Defendants. | |

**DENNIS M. CAVANAUGH, U.S.D.J.**

This matter comes before the Court upon Motion of Defendants New Jersey Attorney General's Office, Jeffery S. Chiesa, Esq., Attorney General State of New Jersey, New Jersey State Police, Det. Christopher Muscianesi, Shield No. 6143, DSG. G. Lubertazzi, Shield No. 4636, DSG. R. Scudder, Shield No. 5012, Det. I., L. Williams, Shield No. 5415, Det. I., R.

1

Zulinski, Shield No. 5815, Det. T., Keyes a/k/a Reyes, Shield No. 6302, Deputy Attorney General Christopher Romanyshyn, Esq., John Does #1 through 5; and A, B, C entities (collectively "Defendants"), to Dismiss the claims asserted by Plaintiff Emilio J. Polanco ("Plaintiff") in his Complaint filed February 8, 2012, pursuant to FED. R. CIV. P. 12(b)(6). ("Compl.," Feb. 8, 2012, ECF. No. 1). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that the Defendants' Motion to Dismiss is **granted.**

I. **BACKGROUND**[1]

This is a civil rights action in which the Plaintiff seeks relief for alleged violation of his rights secured by 42 U.S.C. §§ 1983, 1985(3), as well as the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

In late September of 2008, Det. C. Muscianesi was in charge of a group of New Jersey State Police Officers including Officers Lubertazzi, Scudder, Williams, Zulinski and Keyes a/k/a Reyes, who were conducting an investigation into narcotics trafficking in northern New Jersey. On September 24, 2008, Det. Muscianesi, along with members of his investigative unit, observed a Volkswagen Passat automobile stop at 455 Elizabeth Avenue in Newark, New Jersey. Passengers of the vehicle rapidly entered 455 Elizabeth Avenue, and quickly exited the multi-story apartment building's circular driveway in the vehicle. Shortly after the Volkswagen Passat departed 455 Elizabeth Avenue, Det. Zulinski Det. Zulinski stopped the vehicle and found 80 bricks of heroin in an electronically controlled, hidden compartment in the vehicle. The driver of

---

[1] The facts in this Background section have been taken from the parties' submissions. On this Motion to Dismiss, the Court will accept all factual allegations in the Complaint as true. (ECF No. 1).

the Volkswagen Passat, Fabio Siri-Holguin, as well as Delvi Reyes, and three other individuals were arrested. These individuals stated that they had been visiting Apartment 14E at 455 Elizabeth Avenue.

Det. Muscianesi and members of his unit interviewed occupants of 14E, searched the apartment, but found no contraband. The officers then photographed the five individuals in custody, and after showing the photographs to residents of 455 Elizabeth Avenue, determined that some or all of the individuals had been seen coming and going form Apartment 17A. A telephonic warrant was obtained to search Apartment 17A. Therein, police discovered raw heroin, grinders, stampers, tape, glassine envelopes, and other materials used to package heroin for street sale and distribution.

As a result of the search, and utilizing information provided by Delvi Reyes, who packaged heroin at Apartment 17A and was arrested on September 24, 2008, along with personal information obtained from databases, photos, and personal observation, it was determined that Emilio J. Polanco was the lessee of Apartment 17A and the facilitator of the heroin production facility. On October 16, 2008, the New Jersey State Police obtained an arrest warrant for Plaintiff from the Honorable Judge Kevin Callahan of the Superior Court of New Jersey in Hudson County.

On April 27, 2009, Plaintiff was arrested at Kennedy Airport after arriving in New York on a flight from the Dominican Republic. Plaintiff was transferred to the custody of the New Jersey State Police on May 7, 2009, and was placed in the Essex County Jail. On January 14, 2010, a State Grand Jury returned a six count indictment against Plaintiff. On February 4, 2010, the indictment was dismissed and Plaintiff was released from jail.

On February 8, 2012, Plaintiff filed his Complaint. (ECF. No. 1). On August 20, 2012, Defendants filed a Motion to Dismiss and an accompanying Brief ("Def. Br."). (ECF. No. 9). On September 5, 2012, Plaintiff filed an Opposition Brief. (ECF. No. 13).

The matter is now before this Court.

## II. LEGAL STANDARD

### FED. R. CIV. P. 12(b)(6)

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. To survive a motion to dismiss, the complaint must state a plausible claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Thus, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Bell Atl. Corp., 550 U.S. at 555.

On a Rule 12(b)(6) motion to dismiss, a District Court must limit its review to the Complaint. "A court may not consider matters extraneous to the pleadings without treating the motion as one for summary judgment and giving all parties reasonable opportunity to present materials pertinent to such a motion under Rule 56." Hart v. Elec. Arts, Inc., 740 F. Supp. 2d 658, 662 (D.N.J. 2010). But, "[t]o decide a motion to dismiss, courts generally consider only the

4

allegations contained in the complaint, exhibits attached to the complaint and matters of public record." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). The complaint must 'show' an entitlement to relief with its facts. <u>Steedley v. McBride</u>, 2011 U.S. App. LEXIS 20302, at *4 (3d Cir. Oct. 4, 2011) citing <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 2011 (3d Cir. 2009).

As a general rule, a court may not consider matters that are extraneous to the pleadings when deciding a motion to dismiss. <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1426 (3d. Cir 1997). However, when a document integral to, or explicitly relied upon, in the complaint is considered in determining the motion, there may exist an exception to the general rule that prevents its conversion from one seeking dismissal to one of summary judgment. <u>Id</u>. at 1426 (citation omitted). Included in such items are those subject to judicial notice, matters of public record, orders, items appearing in the record of the case, as well as those documents that are incorporate by reference into the complaint or integral to the claim itself. <u>Buck v. Hampton Twp. School Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006).

## III. DISCUSSION

Plaintiff asserts that the Defendants have violated his civil rights under 42 U.S.C. §§ 1983, 1985(3), and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. As shown below, all claims are dismissed, *sua sponte*, against the State-entity Defendants New Jersey Attorney General's Office, The New Jersey State Police, and the individual Defendants, Jeffery S. Chiesa, Attorney General of New Jersey, Christopher Romanyshyn, Deputy Attorney General, and the State Troopers in their official capacity, as said claims are barred by the Eleventh Amendment, and Defendants are entitled to qualified

immunity.

State agencies and officials acting in their official capacity cannot be sued under the principles of sovereign immunity and the Eleventh Amendment. See <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70-71 (1989).

The Eleventh Amendment, in its entirety, provides "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."

A suit may be barred by the Eleventh Amendment even though a state is not a named party to the action as long as the state is the real party in interest. See <u>Fitchik v. NJ Transit Rail Operations</u>, 873 F.2d 655, 659 (3d Cir 1989). A prosecutors office, when acting in its law enforcement capacity, is an arm of the state. See <u>Write v. State</u>, 169 N.J. 422 (2001). As such, suits against the New Jersey Attorney General's Office, the Office of the Attorney General of New Jersey, and the Office of the Deputy Attorney General of New Jersey, are suits against the state itself, and are prohibited by the Eleventh Amendment.

With regard to Plaintiff's claims against the New Jersey State Police, it has been long held that, absent a state's consent, the Eleventh Amendment bars suits against such a state and its departments or agencies which are "arms of the state." <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 113 S. Ct. 684, 687–89 (1993); <u>Laskaris v. Thornburgh</u>, 661 F.2d 23, 25-26 (1981). An arm of the state is a department or agency of the state which "acts under [the state's] control" or which has "no existence apart from the state." <u>Metcalf & Eddy</u>, 113 S. Ct. at 687–88; <u>Lasarkis</u>, 661 F.2d at 25. Here, the New Jersey State Police is undoubtedly an arm of the

state, and thus is accorded immunity from suit under the Eleventh Amendment.

Next, the individually named Defendants here assert a qualified immunity defense. Defendants contend that Plaintiff's claims arise against Defendants in their official capacities, and that such claims are foreclosed by the qualified immunity doctrine. Defendants argue that they are entitled to qualified immunity on Plaintiff's claims of malicious prosecution, false arrest, and false imprisonment because the exhibits attached to their Motion to Dismiss Brief demonstrate that it was objectively reasonable for the Defendants to believe that Plaintiff had been involved in the packaging and sale of the Controlled Dangerous Substances uncovered. The Court agrees.

"On its face, § 1983 admits of no immunities." Tower v. Glover, 467 U.S. 914, 920 (1984). "But since 1951 this Court has consistently recognized that substantive doctrines of privilege and immunity may limit the relief available in § 1983 litigation[,]" including recognition of qualified immunity for state executive officers. Id. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Butz v. Economou, 438 U.S. 478, 507 (1978).

In Anderson v. Creighton, an FBI agent conducted a warrantless search of the plaintiff's

home, under the notion that the plaintiff was harboring a suspected bank robber. 483 U.S. 635, 637 (1987). The Supreme Court held that whether an official is shielded from liability by qualified immunity for alleged unlawful official action turns on whether a reasonable officer could have believed that warrantless search, under the circumstances, would be lawful. Id. at 641.

Here, there is no misconduct alleged by the complaint–there is not even a warrantless search as there was in Anderson. Unlike the potential issues or warrantless searches alleged in Anderson, Defendants in this case lawfully obtained a search and arrest warrant and were thereby acting as prudent law enforcement agents.

The exhibits attached to Defendants Brief provide support that Detective Muscianesi, participated in the execution of a lawfully obtained search warrant (Def. Br., Ex. A-B) and in the execution of a lawfully obtained arrest warrant (Def. Br., Ex. D), and that such actions were an execution prosecutorial duties. Defendants lawfully participated in the investigation that led to Plaintiff's arrest. Accordingly, the both the State-entity Defendants and the individually named Defendants are entitled to qualified immunity.

8

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **granted**. An appropriate Order accompanies this Opinion.

                                           _/s/ Dennis M. Cavanaugh_  
                                           Dennis M. Cavanaugh, U.S.D.J.

Date:        March 28, 2013  
Orig.:       Clerk  
cc:          All Counsel of Record  
             Hon. Mark Falk, U.S.M.J.  
             File